[Cite as *State v. Chapple*, 2011-Ohio-5670.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96534**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARY CHAPPLE

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544200

**BEFORE:** Sweeney, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** November 3, 2011

**ATTORNEY FOR APPELLANT**

Ryan J. Bokoch, Esq.
Law Offices of Ryan J. Bokoch, L.L.C.
4791 Memphis Avenue
Cleveland, Ohio 44144

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Erica Barnhill, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant Mary Chapple ("defendant") appeals her convictions for assault, resisting arrest, and attempted harassment by an inmate. Appellant's sole contention on appeal is that her convictions were against the manifest weight of the evidence. For the reasons that follow, we affirm.

{¶ 2} This matter proceeded to a bench trial and the evidence that was presented is summarized as follows:

{¶ 3} On November 11, 2010, defendant had plans to go out with her girlfriends. She arranged to have her second cousin, Ms. Smith, watch her children. Defendant returned home around 12:30 a.m. on November 12, 2010; around the same time her husband returned from work. Defendant and her husband began to argue. Ms. Smith saw

them outside fighting when two men approached. Ms. Smith went back inside to tend to defendant's infant and shortly thereafter, defendant ran inside, frantic that her husband was bleeding. Defendant attempted to call the police. The two women went back outside where defendant's husband was found unconscious on the edge of the driveway and bleeding profusely. They applied towels to his wounds and awaited assistance. First, the fire department arrived, then the police, who were followed by EMS.

{¶ 4} Officer Tomaro and his partner Officer Mullin responded to a radio call for domestic violence at E. 114th St., which was defendant's home. Upon arriving, the officers called for an ambulance. Their attempts to determine what had occurred were unsuccessful. Both defendant and Ms. Smith testified that defendant was not responding to the officer's questions. By all accounts, defendant was hysterical, lying next to her husband and screaming his name. The officers stated they had to move defendant in order to permit EMS workers to do their job. This was confirmed by Ms. Smith and defendant.

{¶ 5} At this point the stories diverge. The officers consistently testified that they requested defendant to sit in the police car and repeatedly asked her to drop the blood soaked towel she was carrying with her. The officers said defendant voluntarily sat in the car but chose to swear at Officer Tomaro; ultimately she threw the bloody towel at his chest. This outraged the officer who began swearing at defendant and immediately proceeded to place her under arrest. According to the officers, defendant resisted this process by kicking Officer Tomaro and the door and also took a swing at him.

**{¶ 6}** According to defendant and Ms. Smith, defendant did not initially want to get in the police car, but eventually did so. They said Officer Tomaro was leaning over defendant and pressuring her to confess to causing her husband's injuries. Defendant denied throwing the towel at Tomaro but confirmed that he kept telling her to get it out of his car. Both women speculated that the towel dropped out of defendant's hand while Officer Mullin was handcuffing her. Ms. Smith admitted that she did not actually see the towel drop. Both Ms. Smith and defendant denied that defendant had kicked or hit anyone or anything; stating instead that defendant was having a hard time fitting in the cruiser's backseat because of her size.

**{¶ 7}** Officer Tomaro said he knew that the towel had transferred blood onto his dark navy blue uniform shirt even though he could not see it. He was very concerned that the blood may have contained some type of disease. He threw out the shirt and it had not been photographed or tested for blood. Officer Mullin said he saw blood on his partner's uniform shirt. Every witness confirmed that the towel was literally dripping with blood.

**{¶ 8}** Detective Hudelson interviewed defendant in jail. According to him, defendant admitted to throwing the towel at the Officer but said she threw it at his feet, not his chest. He also recalled her saying she kicked him and the door because she did not want him to close the door. Det. Hudelson's report reflects that defendant said she kicked the car door.

**{¶ 9}** After deliberating, the trial court found defendant guilty of assault in violation of R.C. 2903.13(A); resisting arrest in violation of R.C. 2921.33(A); and

attempted harassment by an inmate in violation of R.C. 2923.02/2921.38(B). The court placed defendant on a term of community control sanctions, with conditions and she has appealed asserting only that her convictions were against the manifest weight of the evidence.

{¶ 10} "Assignment of Error: Appellant's convictions are against the manifest weight of the evidence."

{¶ 11} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 12} Here, the evidence does not weigh heavily against defendant's convictions. Defendant was convicted of assault under R.C. 2903.13(A), which provides, "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 13} Assault does not require that the offender actually caused physical harm to the victim, it is enough that he or she made an attempt to do so. It is sufficient if the

offender knowingly causes the victim to believe the offender will carry his threat into execution. There is evidence in the record that supports the trial court's conclusions that defendant committed assault. Both officers testified that defendant kicked Officer Tomaro. Although defendant denied it and Ms. Smith did not see it, this was a credibility issue within the province of the trier of fact to resolve.

{¶ 14} R.C. 2921.33(A) provides: "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Again, there is evidence in the record to support the trial court's determination of guilt on this charge and defendant's conviction is not against the manifest weight of the evidence. This evidence includes the testimony of the arresting officers and the testimony of Det. Hudelson.

{¶ 15} R.C. 2921.38(B) provides:

{¶ 16} "No person, with intent to harass, annoy, threaten, or alarm a law enforcement officer, shall cause or attempt to cause the law enforcement officer to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the law enforcement officer, by expelling the bodily substance upon the law enforcement officer, or in any other manner." R.C. 2921.38(B).

{¶ 17} And, R.C. 2923.02 provides:

{¶ 18} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 19} An attempt to commit an offense under R.C. 2921.38(B) is a misdemeanor of the first degree. R.C. 2923.02(E)(1). The arresting officers testified that defendant threw a blood soaked towel at Officer Tomaro. Although both officers said they knew the blood hit Officer Tomaro and transferred to his uniform shirt, defendant and Ms. Smith denied it. Further, the shirt was not photographed or tested before Officer Tomaro threw it away. The trial court found defendant guilty of attempted harassment by an inmate, which is supported by the record evidence.

{¶ 20} Defendant's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, J., CONCUR